UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MINYANG YUAN,

Petitioner,

v.

WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. 5:26-cv-06075-KES

ORDER GRANTING PETITION IN PART AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Minyang Yuan ("Petitioner") filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 8), and Petitioner replied ("Reply" at Dkt. 9).

The Court grants the Petition in part and orders that Petitioner be immediately released from custody. Petitioner is entitled to relief on Ground 1 of the Petition, because he was detained by ICE without a pre-deprivation hearing

before a neutral adjudicator. The Court therefore grants Ground 1 and dismisses Ground 2 (which seeks the same relief) as moot.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into the U.S. and Asylum Application (2011-2026).

Petitioner is a citizen of China. (Pet. at 3, ¶ 7.) He was admitted into the U.S. in either 2011 or 2014 on an F-1 student visa. (Pet. at 3-4, ¶ 13; Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213).) According to DHS, Petitioner was authorized to remain in the U.S. until August 30, 2016. (Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213).)

Petitioner alleges that he attempted to file an asylum application in 2014, before his status expired, but that his immigration attorney "lost" the relevant documents. (Pet. at 4, ¶ 13.) DHS records reflect that his asylum application was not received until September 27, 2016. (Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213).) That application remains pending.

Petitioner has no criminal history. (Pet. at 4, ¶ 14; Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213).) He has maintained employment and employment authorization, with his Employment Authorization Document valid from October 2024 through October 2028. (Pet. at 4, ¶ 14.)

### B. Current Detention by ICE (Sept. 11, 2026).

On or about September 11, 2026, Petitioner was traveling with his mother from Denver, Colorado, to Los Angeles, California. (Pet. at 4, ¶ 15.) According to DHS records, Petitioner "came to the attention of [ICE] pursuant to a Transportation Security Administration (TSA) lead referral." (Answer Ex. 3 / Dkt. 8-3 at 2 (DHS Form I-213).)

At the Los Angeles airport, "Petitioner was approached by approximately three to four plainclothes [ICE] officers, who identified themselves as ICE officers and requested his identification." (Pet. at 4, ¶ 15.) Petitioner provided his driver's license, employment authorization document, and Social Security card. (Pet. at 4,

¶ 15.)

According to Petitioner, the ICE officers "informed [him] that they would take him to see an Immigration Judge ["IJ"]"; "they did not explain the reason for his arrest," and he was "taken into ICE custody without being presented with a warrant, without advance notice, and without a hearing." (Pet. at 4, ¶ 16.)

However, DHS records show that an administrative warrant was issued for Petitioner's arrest on September 11, 2026 and served on him the same day. (Answer Ex. 2 / Dkt. 8-2 (copy of the warrant with certificate of service).)

On September 11, 2026, DHS also issued a notice to appear ("NTA") alleging Petitioner is removable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA") because his visa expired on August 30, 2016. (Answer Ex. 1 / Dkt. 8-1.) According to a certificate of service on the NTA, it was served on Petitioner the same day. (Id. at 3.)

Petitioner was transported to Adelanto, where he remains in ICE custody. (Pet. at 4, ¶ 16); see also ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 209-209-347 (China), last accessed Oct. 27, 2026).

Petitioner was placed in removal proceedings, and "[j]urisdiction over [his] asylum application" was "transferred to the immigration court…." (Pet. at 4, ¶ 18.) Those proceedings remain pending; he currently has a master hearing scheduled for December 16, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 209-209-347 (China), last accessed Oct. 27, 2026).

**C. Bond Hearing (Sept. 30, 2026).**

On September 30, 2026, Petitioner had a bond hearing before an IJ. (Answer Ex. 4 / Dkt. 8-4.) The IJ denied bond, finding, "[Petitioner] failed to meet his burden to establish that he is not such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate it." (Id. at 1.) The IJ's brief written order stated, "The Court summarized its decision and

analysis on the record. Should [Petitioner] appeal the Court's custody redetermination decision to the Board of Immigration Appeals ["BIA"], this Court will provide a memorandum to facilitate review of [Petitioner's] appeal." (Id.) Petitioner appealed the IJ's bond order to the BIA. (Answer Ex. 5 / Dkt. 8-5 (filing receipt).)

**D. Habeas Proceedings.**

Petitioner filed the present Petition on October 14, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Respondents violated Petitioner's Fifth Amendment right to procedural due process "by detaining him without advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the basis for his detention…." (Pet. at 6, ¶ 29.) He argues, "Courts have repeatedly recognized that noncitizens who entered on valid visitor visas 'developed a substantial liberty interest in remaining out of custody based on their lawful admission into the United States and the community ties they established since their admission.'" (Id. at 7, ¶ 31.)

Ground 2: Petitioner's detention violates his Fifth Amendment right to substantive due process because his detention is not "reasonably necessary to prevent flight or protect the community…." (Pet. at 11, ¶ 47.)

The Petition seeks: (a) immediate release from custody; (b) an order requiring Respondents to return Petitioner's personal belongings; (c) an order "prohibit[ing] Respondents from imposing any conditions of supervision, including electronic monitoring or a GPS ankle monitor, absent a hearing consistent with due process"; (d) and an order preventing his re-detention without a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence. (Pet. at 12.)

Respondents answered the Petition on October 22, 2026. (Dkt. 8.) They

argue, first, that Petitioner "has not gained a vested liberty interest," protected by the Fifth Amendment Due Process Clause, because "this is his first detention for visa overstay." (Id. at 2-3.) Second, they argue that the bond hearing conducted after his arrest was sufficient to protect his due process rights. (Id. at 3-4.) Third, they argue that Petitioner "should be required to exhaust administrative remedies" by awaiting the BIA's decision on his appeal of the IJ's bond order. (Id. at 4-7.)

Petitioner replied on October 24, 2026. (Dkt. 9.) He argues that he is not "ask[ing] this Court to review or overturn the [IJ's] September 30, 2026 discretionary bond determination" but rather "challeng[ing] Respondents" decision to arrest and detain him on September 11, 2026, without first providing notice or an opportunity to be heard before a neutral decisionmaker." (Id. at 1.) He argues, "The bond hearing conducted nineteen days later did not retroactively provide the pre-deprivation process to which Petitioner was constitutionally entitled." (Id. at 2.) He also argues that "exhaustion should be waived because Petitioner challenges the constitutionality of his arrest," a claim that "lies outside the [IJ's] authority," and because "requiring [him] to remain detained … would cause irreparable harm…." (Id. at 4.)

On October 28, 2026, the Magistrate Judge issued a report and recommendation ("R&R") that the Petition be granted as to Ground 1 and that Petitioner be released from custody. (Dkt. 10.) On October 30, 2026, Respondents objected to the R&R. (Dkt. 12.) They argue that "the law in this district is clear" that noncitizens like Petitioner, who have never been previously detained by ICE, are not entitled to a pre-deprivation hearing. (Id. at 3.) Petitioner then consented to the jurisdiction of the Magistrate Judge (Dkt. 13), and the assigned District Judge approved that consent (Dkt. 14).[1]

---

[1] Respondents are deemed to have consented to the jurisdiction of the Magistrate Judge, because they did not file a notice of withdrawal of consent

For the same reasons explained in the prior R&R, the Court finds that Petitioner is entitled to relief on Ground 1 of the Petition and that Ground 2 will be dismissed as moot.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies Is Waived.

#### 1. Legal Standard.

For habeas petitions governed by § 2241, the exhaustion requirement is prudential rather than jurisdictional. Courts deciding whether to require prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

#### 2. Analysis.

The constitutional claim that Petitioner raises in Ground 1 of the Petition—

---

within 3 days of service of the petition. (Dkt. 5 at 4 (General Order 26-05).)

that he should have received a pre-detention custody hearing—seeks relief that the IJ and BIA cannot grant, as he admits that such a hearing is not required by the INA or DHS regulations. Requiring him to exhaust that claim in immigration court would therefore be futile. Requiring him to do so would also cause irreparable injury by prolonging his immigration detention. See, e.g., Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *11, 2026 U.S. Dist. LEXIS 46944 (C.D. Cal. Mar. 5, 2026) ("[R]equiring Miri to go before the [BIA] would prolong his unconstitutional detention, thereby causing irreparable injury."); Mendoza v. Noem, No. 25-cv-3227-MWF-AGR, 2026 WL 923311, at *5, 2026 U.S. Dist. LEXIS 75624 (C.D. Cal. Apr. 1, 2026) ("As other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost certainly unlawful, and thus would suffer irreparable injury.").

Accordingly, the Court waives the prudential exhaustion of administrative remedies requirement in this case.

**B. Petitioner is Entitled to Relief on Ground 1, Because He Was Entitled to a Pre-Deprivation Bond Hearing as a Matter of Due Process.**

**1. Legal Standard.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

"[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Analysis.**

a. The private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Respondents argue that Petitioner does not have a legally cognizable liberty interest in release from custody because this is the first time that ICE has detained him. (Answer at 2-3.) This appears to be an attempt to distinguish cases finding that, once a noncitizen is released on parole, they obtain a protected liberty interest in release. See, e.g., Pinchi, 792 F. Supp. 3d at 1032-33; Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025). This is not the only situation in which courts have found that noncitizens have a protected liberty interest in release from custody, however.

District courts generally reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added). Many courts have found this includes noncitizens who have overstayed their visa. See, e.g., Tello Vazquez v. Mullin, No. 26-cv-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community."). Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired. See, e.g., Huang v. Blanche, No. 2:26-cv-02157, 2026 WL 2271901, at *1, 8, 2026 U.S. Dist. LEXIS 178076 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until about 4 years later); Benipal v. Rokosky, No. 26-cv-01306, 2026 WL 1355010, at *1, 10, 2026 U.S. Dist. LEXIS 108085 (D. Ariz. Apr. 24, 2026) (finding noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa has expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the U.S., and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028, 2026 WL 788112, at *1, 2026 U.S. Dist. LEXIS 59347 (E.D. Cal. Mar. 20, 2026) ("[T]he petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status.");

Kharitonova v. Albarran, No. 26-cv-01362, 2026 WL 531441, at *2, 2026 U.S. Dist. LEXIS 39213 (N.D. Cal. Feb. 25, 2026) ("Petitioner has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. … The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' … The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. … Although the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").[2]

Here, Petitioner has been seeking asylum since September 2016. (Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213).) As recently as 2024, he was granted

---

[2] The Court recognizes that some district courts have disagreed with this reasoning. See, e.g., Li v. Larose, No. 26-cv-1614-JLS-MMP, 2026 WL 948362, at *1-2, 2026 U.S. Dist. LEXIS 76610, at *5-6 (S.D. Cal. Apr. 8, 2026). However, the Court disagrees with Respondents' assertion that all or most district courts in the Central District of California agree with their position. (See Dkt. 12 at 2-3 (Respondents' objections to the prior R&R, collecting cases).) Even within this district, there are decisions going both ways. See, e.g., Zeng v. Janecha, No. 26-cv-04176-SP, 2026 U.S. Dist. LEXIS 211456, at *6-7 (C.D. Cal. Sept. 17, 2026) (finding noncitizen asylum-seeker who overstayed their visa, and had never previously been detained by ICE, had a protected liberty interest in release); Ren v. Janecha, No. 26-cv-4364-AJR, 2026 U.S. Dist. LEXIS 183879, at *8-9, 2026 WL 2413320 (C.D. Cal. Aug. 17, 2026) (same); Martinez v. Acting Warden of the Adelanto Det. Ctr., No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5, 2026 U.S. Dist. LEXIS 176507, at *12 (C.D. Cal. Aug. 5, 2026) ("This principle extends to those who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents."). Regardless, the Ninth Circuit and Supreme Court have not weighed in on this issue, and opinions from other district courts are merely persuasive on this Court, not binding. This Court finds the line of authority cited above to be more persuasive.

authorization to work in the U.S., authorization that remains valid through 2028. (Pet. at 4, ¶ 14.) For more than 10 years, the government was aware of Petitioner's presence in the U.S. and chose not to detain him. Under the reasoning of the cases cited above, this gave rise to a protected interest in remaining at liberty while his asylum application is adjudicated.

b. The risk of an erroneous deprivation of such interest and the value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

The record before this Court contains no explanation of why, after leaving Petitioner at liberty for the past 10 years, DHS determined that Petitioner needed to be detained. There is no evidence, for example, that Petitioner was arrested for or convicted of any criminal offense. (See Answer Ex. 3 / Dkt. 8-3 at 3 (DHS Form I-213, noting Petitioner has no criminal history).) The only explanation given in internal DHS records is that Petitioner "overstayed his F1 visa," i.e., the visa that expired in August 2016. (Id.)[3]

---

[3] There is no Form I-286 in the record indicating that the arresting officers made any kind of initial custody determination. See generally 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the [INA], under the conditions at section 236(a)(2) and (3) of the [INA]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); id., 236.1(g) ("At the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, an

A pre-deprivation hearing would require the government to produce its evidence of danger or flight and give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* a noncitizen is detained gives them a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.

c. Countervailing government interest.

Immigration detention is not punitive in nature; the only legitimate reasons for detaining a noncitizen like Petitioner is to mitigate danger to the community or flight risk. See Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11; Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-

---

immigration official may issue a Form I-286, Notice of Custody Determination").

ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."). In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### C. Ground 2 Will Be Dismissed as Moot.

Ground 2 seeks the same relief as Ground 1: Petitioner's release from immigration custody. Because the Court finds that relief should be granted on Ground 1, Ground 2 will be dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition is granted and Ground 2 is dismissed as moot.
2. Respondents shall **immediately release** Minyang Yuan (A# 209-209-347) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner's counsel may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing

Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[4]

DATED: November 2, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[4] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).